### TURNER et al. v. WILLACY COUNTY.
### No. 1642—6074.

Commission of Appeals of Texas, Section A.
March 15, 1933.

Jesse G. Foster, of Raymondville, and Chas. L. Black, of Austin, for plaintiffs in error.

A. B. Crane, of Raymondville, for defendant in error.

CRITZ, Judge.

It seems from the record before us that on or about August 30, 1924, one A. F. Lee was appointed by Judge Cunningham, judge of the criminal district court of Willacy county, Tex., as attorney ad litem to represent 217 nonresident property owners in certain tax suits then pending in that court. The court allowed Lee a fee of $3 in each of said suits, and the several judgments adjudged that such fee should be taxed as costs and be collected by the sheriff of Willacy county, Tex., for Lee.

On or about December, 1924, Joe Turner, the then sheriff of Willacy county, collected for Lee the fees in the 217 cases, amounting to $651. It seems that Lee's whereabouts became unknown, and the sheriff was therefore unable to pay this money over to him. Sheriff Turner went out of office in 1926 and turned this money over to his successor R. H. Teller. Teller went out of office in 1928, and turned the money over to his successor L. D. Snow. In December, 1928, the commissioners' court of Willacy county ordered this money paid over to the county treasurer of such county, to be placed by him to the credit of its road and bridge fund. Sheriff Snow promptly obeyed the above order.

About October 12, 1929, after the above money had been paid over to the treasurer of Willacy county, A. F. Lee, by an instrument in writing duly executed by him, and for a valuable consideration, transferred and assigned to Mrs. Joe Turner all his right, title, and interest in and to the above money. Aft-

er becoming owner of such fund by assignment as above shown, Mrs. Turner made due claim on the commissioners' court of Willacy county for the same. The commissioners' court rejected the claim, and this suit followed in the district court. Trial in the district court resulted in a judgment for Mrs. Turner. On appeal by the county to the Court of Civil Appeals at San Antonio, this judgment was reversed, and judgment rendered for the county. 40 S.W.(2d) 843. Mrs. Turner brings error.

At this point we deem it proper to quote the statutes involved in this controversy. They are articles 104, 105, and 106, P. C. of Texas, 1925. They read as follows:

"Art. 104. Each county and precinct officer who shall in his official capacity collect or receive any money or fees belonging to another person, shall inform such person of the collection of such money or fees, and promptly pay the same over on demand to the one entitled thereto, taking receipt therefor, which shall be entered or noted in his fee book.

"Art. 105. On or before the second Mondays in March, June, September and December of each year, said officers shall make written sworn report to the commissioners court of all such moneys and fees so collected by them during the quarter last preceding and remaining in their hands uncalled for, giving the number and style of each cause in which the same accrued and the name of the person entitled thereto, which report shall be filed with the county clerk and by him kept for future reference and examination.

"Art. 106. Each officer collecting or having the custody of any money or fees embraced within the provisions of this law at the expiration of four years from the time of collecting or receiving such money or fees, in all cases where the same have not been paid over to the person entitled thereto, shall pay the same to the county treasurer of his county, accompanying the same by an itemized statement, as provided in Article 105, which shall be filed and kept by said treasurer; and said money or fees shall be by him placed to the credit of the road and bridge fund. The treasurer shall issue to said officer his receipt for said money or fees itemizing the same as above provided, which receipt shall be filed by said officer with the county clerk. Any officer upon retiring from office having any money or fees in his hands embraced within these provisions and which are not due to be turned over to the treasurer as herein provided, shall turn the same over to his successor in office, together with an itemized list of the same, taking receipt therefor, and his successor shall report and pay over the same to the county treasurer in accordance with the provisions hereof."

As we understand the opinion of the Court of Civil Appeals, it holds that the above statutes partake of the nature of statutes of limitation, and that their effect is to create a four-year statute of limitation and make it begin to run in favor of the county the moment a county officer receives any money or fees belonging to another person. We are unable to agree with this conclusion.

It is our opinion that the very wording of the above statutes negative any purpose to deprive the owner of his title to the funds included in their provisions. It is clear that the officer who collects such funds does so by virtue of his office, and he holds them at all times subject to the demand of the owner. It follows, therefore, that while these funds remained in the hands of the several sheriffs of Willacy county they were mere trust funds belonging to Lee, and the sheriffs were mere trustees.

When we come to examine the statutes for any words that operate to vest the county with title to such funds when paid over by the officer, we are unable to discover them. On the contrary, we think the statutes affirmatively evidence a contrary intent. Article 104, supra, provides that any officer who shall collect money or fees belonging to another shall inform such person of the collection of the same and promptly pay the same over to him on demand, taking his receipt therefor. Article 105 provides that the officer collecting such money or fees shall make quarterly reports under oath to the commissioners' court showing all such moneys and fees so collected, etc., and giving, among other things, the name of the person entitled to such money. This article then particularly requires that such report shall be filed with the county clerk and by him kept for future reference. Article 106 provides, in substance, that after the expiration of four years from the receipt of such money or fees by the officer, where same have not been called for, they shall be paid over to the county treasurer, and placed to the credit of the county road and bridge fund. This article plainly negatives any intent to vest title in the county as against the rightful owner by, in detail, providing a method to preserve a record of ownership. In this connection we call attention to the fact that article 106 particularly provides that, when such funds are deposited with the county treasurer, the depositor shall accompany the same by an itemized statement, as provided in article 105, which shall be kept by the treasurer. When we refer back to article 105 to ascertain what the itemized statement therein provided for shall contain, we find that it particularly provides that it must contain "*the name of the person*

*entitled thereto.*" (Italics ours.) It follows therefore that article 106, in effect, provides that when the money is deposited with the county treasurer, it shall be accompanied by an itemized statement showing the name of the person entitled thereto, and this statement must be kept by the treasurer. Article 106 then provides, in effect, that the treasurer shall issue to the officer making the deposit a receipt for such money or fees, and itemize the same as above provided. In other words, the statute, in substance and effect, provides that the treasurer shall issue to the depositing officer an itemized receipt *showing the name of the person entitled to the money.* It is then provided that this final treasurer's receipt shall be filed with the county clerk. All such provisions demonstrate to us that the prime purpose of the three statutes is to protect the owner of the funds rather than to deprive him of his property. Finally, nowhere do the statutes say the money shall become the property of the county.

At this point, we wish to say that we do not want to be understood as holding that these statutes would be constitutional if they did not attempt to give the county the fee title to these funds in the manner contended for by the county, as against the legal owner. That matter is not before us, because the statute attempts no such result.

Our decision of the issue already discussed makes it proper that we pass on another issue in a way raised in the county's brief in the Court of Civil Appeals but not passed on by that court on account of the fact that its opinion made it unnecessary.

The record shows that the county pleaded as a special defense in the district court that Lee was not a licensed attorney at the time he was appointed attorney ad litem, as shown by our statement. The district court sustained Mrs. Turner's special exception to this plea, and the county excepted. This ruling was not error. The plea was clearly a collateral attack on the final judgments of the criminal district court of Willacy county, Tex. That court appointed A. F. Lee attorney ad litem in due form, and the several final judgments finally and completely adjudged him the fees in suit here. These matters not only appear on the face of the pleading, but are conclusively shown by the facts.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the district court be affirmed.

CURETON, Chief Justice.

Judgment of the Court of Civil Appeals is reversed, and judgment of the district court is affirmed.